er in possession. Tax Law (Consol. Laws 1909, c. 60) §§ 9, 20, 21, as amended by Laws 1911, c. 315. The tax levied on the property in question was a valid lien, and the property could have been sold to enforce the collection of the tax.

Section 42 of the Village Law also contains the following provision:

" * * * And must also be the owner during the term of his office of property assessed to him on the assessment roll of said village. * * *"

It is urged by the defendant that, if the words "assessed to him" implied ownership of the property at the time of the assessment, as contended by the relator, there would have been no necessity of the last-quoted provision providing for both ownership of the property and assessment of the property to the office holder during his term of office. The author of Bender's Village Laws, in his note to section 42, at page 25, says:

"The property qualification provided hereby, of course, enables a candidate for office to become the owner of assessed property for the mere purpose of establishing his eligibility; but the provision requiring that such ownership shall continue 'during his term' would seem to protect against serious abuse of the privilege."

Real estate owned by a nonresident of a village is properly assessed to the tenant or occupant. Such tenant or occupant, by acquiring the legal title to such real estate before the election, would be eligible under section 42 of the Village Law to hold the office of president. The Legislature, in framing section 42, might very well have had such a situation in view.

The action of the board of trustees at their meeting on March 20, 1913, in declaring the defendant ineligible to hold the office of president, was clearly without legal justification and of no force or effect. People ex rel. Gerst v. Davis, 43 Misc. Rep. 397, 89 N. Y. Supp. 334.

My conclusion is that the defendant, William P. Kanar, was at the time of the election eligible to the office of president of the village, that he received a majority of the votes cast for such office at the village election, and was duly elected, and is entitled to hold such office.

---

(80 Misc. Rep. 127.)

WESTINGHOUSE–CHURCH–KERR CO. v. LONG ISLAND R. CO.

(Supreme Court, Trial Term, New York County. March, 1913.)

1. CONTRACTS (§ 233*)—CONSTRUCTION CONTRACT—INTERPRETATION—PERSONAL INJURY CLAIM—REIMBURSEMENT—"COST OF ACCIDENTS."

Where the percentage contract under which plaintiff engaged in construction work for defendant provided that plaintiff's compensation should be 10 per centum of the actual cost of the work, and that the total cost should include, among other things, the "cost of accidents," the words quoted covered a judgment recovered against plaintiff by an employé for personal injuries sustained through the plaintiff's negligence, and plaintiff could recover from defendant the amount of such judgment, less the sum paid thereon by a casualty insurance company.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1098; Dec. Dig. § 233.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. INSURANCE (§ 139*)—VALIDITY—OBJECT—NEGLIGENCE.
    A contract insuring an individual against the consequences of his own wrong, in the shape of damages for personal injuries caused by his own negligence, is valid.
    [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 250, 251; Dec. Dig. § 139.*]

Action by the Westinghouse-Church-Kerr Company against the Long Island Railroad Company. Judgment for plaintiff.

· Griggs, Baldwin & Baldwin, of New York City (Martin Conboy, of New York City, of counsel), for plaintiff.

Joseph F. Keany, of New York City (William C. Beecher, of New York City, of counsel), for defendant.

GAVEGAN, J.   This action, tried before the court without a jury, was brought by the plaintiff to recover from the defendant the sum of $21,414.83, and arose out of a dispute as to the meaning of the words "cost of accidents" contained in their written contract. The amount sued for represents the balance left, after deducting $5,818.29, paid by a casualty insurance company as indemnity and costs on a judgment for $27,008.97, recovered by one Edwin Rosebrook, an electrician, for personal injuries sustained by him through the negligence of and while in the employ of the Westinghouse-Church-Kerr Company, which was engaged at the time in construction work for the Long Island Railroad Company under a contract to electrify its lines.

[1] The contract provided that the plaintiff's compensation should be 10 per centum of the "actual cost" of the work, and that the actual cost should include, among other things, the "cost of accidents." The plaintiff, having paid said balance of the judgment referred to, now claims it should be reimbursed therefor by the defendant. The language of the agreement, in so far as it bears on the controversy, is as follows:

"The actual cost shall include all disbursements for labor and services, and the cost of superintendents, foremen, and other employés to the extent that such services and expenses are applied specifically to the work; * * * also miscellaneous charges, such as fire and casualty insurance, cost of accidents, and all other sums of money necessarily or reasonably paid in the conduct of the work; it being the intent of the parties that only such expenses as are actually incurred shall constitute or be included in the actual cost."

The defendant contends that the words "cost of accidents" were intended to cover only such mishaps as could not be foreseen, for example, damage caused by storms, floods, or other acts of God, and insists that, if judgments recovered against the plaintiff as a result of its own negligence were intended to be included in the actual cost of the work, the contract itself would have so stated expressly, and not left the uncertainty of inference an item of such considerable importance.

This particular species of agreement, commonly known as "percentage contracts," discloses a method of doing and engaging to do construction work which has become quite common in recent years; but it does not appear that litigation has arisen concerning their construc-

tion, for neither counsel for plaintiff nor defendant, nor my own re-search, has disclosed any case involving this question. Any effort, therefore, to determine the intention of the parties as revealed by the contract, must begin with an examination into the elementary rela-tions between them. If we bear in mind that the work was being done *by* the plaintiff, whose interest therein was merely transitory, and, on the other hand, that it was being done *for* the defendant, whose prop-erty was thereby permanently improved and enhanced in value in pro-portion to the cost, we can at once perceive that it would be unfair and unreasonable to saddle the plaintiff, limited as it was to a percent-age compensation, with any portion of that cost actually incurred in the conduct of the work.

The work itself required for its prosecution the services of a great number of laborers and mechanics of all descriptions, as well as nu-merous machines and implements. Experience in this class of work shows that accidents causing personal injuries are inevitable and inci-dental to the progress of the work. Can it, then, be reasonably urged, as within the contemplation of the parties, that the plaintiff's compen-sation should depend upon such hazardous contingencies as judgments against it for personal injuries to its employés while engaged in the work, even though such injuries were caused by the negligence of its representatives?

To charge the plaintiff with the loss such judgments would mean to it would be equivalent to depriving it of any prospect of certain com-pensation on the basis fixed in the agreement. Such hazards are fre-quently and usually assumed by contractors in submitting proposals for work on a lump sum basis; but, as I read the contract before me, this was the very thing the plaintiff intended to avoid and the defend-ant agreed to assume. It will be observed that the defendant express-ly agreed to pay for casualty insurance, and that the provisions for the payment of casualty insurance and the cost of accidents are enumerat-ed as similar items under the same heading of "miscellaneous charg-es." Unless the defendant's agreement to pay premiums on casualty insurance was for the specific purpose of reducing the "cost of acci-dents," that provision, it seems to me, would have to be regarded as surplusage. But the contract must be construed as a whole, and, giv-ing to said provision the meaning which to me appears plain, I reach the conclusion that the defendant intended to include in the actual cost of the work those accidents the cost of which is not ordinarily covered completely by casualty insurance, such as the accident in question, for which the plaintiff was indemnified to the extent only of $5,000 and costs, the customary maximum limit of liability assumed by insurance companies in any one case.

This construction of the contract is supported, moreover, by the conduct and dealings between the parties themselves with reference to similar casualties which occurred prior to the accident in question. One instance indicating that the defendant considered itself liable for the cost of accidents caused by the plaintiff occurred when it advised plaintiff to pay a claim for damages for injuries to the property of one Larsen, amounting to $850, which the plaintiff did, and was subse-

quently reimbursed by the defendant. Another instance was the reimbursement to the plaintiff in the amount of $200 paid by it to one O'Neil for damages for personal injuries, which adjustment was advised and authorized by the defendant. Even in the case of Rosebrook, the defendant consulted the plaintiff as to the advisability of paying his wages and expenses, and expressed approval of· the arrangement. Thus reinforced by the acts of the parties themselves, no straining is required to sustain the plaintiff's contention that the words "cost of accidents" were intended to cover such judgments as the one upon which this action was brought.

The point is urged by defendant's counsel that, if plaintiff's contention were right, it would also be legally entitled under the contract to 10 per cent. additional of the amount claimed, which would be in effect placing a premium on its own negligence. The answer to this is that plaintiff's failure to ask for all that it may be entitled to is no reason for refusing to give it what it is entitled to.

[2] It may be argued with·some force, theoretically, and perhaps morally, that no person should be permitted to insure another against the consequences of his own wrong, whether the wrong be against the state or against an individual, since a tort is only next door to a crime, so to speak, and both are, therefore, too closely related to justify an individual in thus evading his responsibility for either. This line of reasoning may also have much legal force, if in the future new public interests created by state insurance shall change existing standards of public policy; ' but it is too well settled upon existing authority to be questioned that contracts insuring an individual against the consequences of his own wrong, in the shape of damages for personal injuries caused by his own negligence, are recognized as valid and enforceable. There is no difference in principle between the contract under consideration, whereby the defendant agreed to indemnify the plaintiff for damages caused by the plaintiff's negligence, and the ordinary policy of indemnity insurance for which a premium is paid by the insured. The defendant's contention, therefore, that the construction sought by the plaintiff would render the contract void as against public policy, is without the support of legal authority.

Judgment for the plaintiff for the sum of $21,414.83, with interest from November 20, 1911.

Judgment for plaintiff.